**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Christopher D. WILMER, Defendant-Appellant.**

**No. 85–3182.**

United States Court of Appeals, Ninth Circuit.

Submitted July 28, 1986.[*]

Decided Sept. 5, 1986.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Fed.R. App.P. 34(a) and 9th Cir. R. 3(f).

Edward C. Eisler, Sp. Asst. U.S. Atty., Tacoma, Wash., for plaintiff-appellee.

Allen Bentley, Asst. Federal Public Defender, Seattle, Wash., for defendant-appellant.

Before TANG, PREGERSON, and ALARCON, Circuit Judges.

## OPINION

ALARCON, Circuit Judge:

Christopher Wilmer appeals from his conviction for driving while intoxicated and driving while his license was suspended in violation of Washington state law.[1] These crimes occurred at McChord Air Force Base in the state of Washington. The district court had subject matter jurisdiction because the crimes occurred on a military base. *United States v. Binder*, 769 F.2d 595, 600 (9th Cir.1985).[2] Wilmer was prosecuted under the Assimilative Crimes Act. 18 U.S.C. §§ 7 and 13 (1982).[3] We must decide whether federal or state rules of evidence apply at the trial of criminal matters prosecuted under the Assimilative Crimes Act and whether there was sufficient evidence to convice Wilmer. We con-

1. Wilmer was prosecuted under R.C.W. 46.20.-342 and R.C.W. 46.61.502. R.C.W. 46.20.342 provides in pertinent part:

(1) Any person who drives a motor vehicle on any public highway of this state when his privilege to do so is suspended or revoked in this or any other state or when his policy of insurance or bond, when required under this chapter, has been canceled or terminated, is guilty of a gross misdemeanor.

R.C.W. 46.61.502 provides in pertinent part as follows:

A person is guilty of driving while under the influence of intoxicating liquor or any drug if he drives a vehicle within this state while:

(1) He has 0.10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood, or other bodily substance made under RCW 46.61.506 as now or hereafter amended; or

(2) He is under the influence of or affected by intoxicating liquor or any drug; or

(3) He is under the combined influence of or affected by intoxicating liquor and any drug.

2. Wilmer executed a written waiver of his right to trial, judgment, and sentencing before a United States district judge and consented to have his case heard by a United States magistrate. He also waived his right to a jury trial. Wilmer appealed his conviction to the United States District Court for the Western District of Washington pursuant to 18 U.S.C. § 3402 and Rule 7(b), Rules for the Trial of Misdemeanors Before United States Magistrates. The conviction was affirmed by the district court without opinion.

3. 18 U.S.C. § 13 provides as follows:

§ 13. Laws of states adopted for areas within federal jurisdiction

Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 7 provides as follows:

§ 7. Special maritime and territorial jurisdiction of the United States defined

The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

(1) The high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, and any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, District, or possession thereof, when such vessel is within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State.

(2) Any vessel registered, licensed, or enrolled under the laws of the United States, and being on a voyage upon the waters of any of the Great Lakes, or any of the waters connecting them, or upon the Saint Lawrence River where the same constitutes the International Boundary Line.

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

(4) Any island, rock, or key containing deposits of guano, which may, at the discretion of the President, be considered as appertaining to the United States.

(5) Any aircraft belonging in whole or in part to the United States, or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State, Territory, District, or possession thereof, while such aircraft is in flight over the high seas, or over any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular state.

clude that the federal rules of evidence apply.

## I.  PERTINENT FACTS

At 4:00 a.m. on January 2, 1985, two Air Force security police officers on patrol duty at McChord Air Force Base observed a car drive onto the shoulder of the road and stop.  As the police approached the vehicle, the driver attempted to get the vehicle back on the road.  Staff Sergeant Marvin McDonald testified that he saw the driver wave at them to pass him.  McDonald testified that he thought "his arm" was out of the window.  The car stopped again.  When Staff Sergeant McDonald approached the car on foot, he saw Wilmer seated behind the wheel.  Diane Burbank, the owner of the car, was seated on the passenger side of the vehicle.  McDonald testified that Wilmer's eyes were glazed and his speech was very slurred.  Wilmer was asked for identification.  He produced a number of cards but failed to present a driver's license.  Wilmer got out of the car very slowly.  He was asked to step to the rear of the vehicle for a field sobriety test.  Staff Sergeant McDonald testified that field sobriety tests were not conducted at the scene of the arrest because it was extremely cold and Wilmer was only wearing a short sleeved shirt and vest to cover the upper part of his body.

Wilmer was transported to the law enforcement desk at McChord Air Force Base.  There he was requested to perform two field sobriety tests.  At first, Wilmer was quite belligerent and stated he did not want to perform the tests.  He then agreed to "go ahead and try to do it."  During this conversation, Staff Sergeant McDonald perceived an extreme odor of alcohol.

Wilmer was asked to perform the heel-to-toe balance test.  Wilmer was "unsure of his steps" and stopped in the middle and turned around and stated he would try again.

Wilmer performed the coin test very slowly.  He was also slow in performing the finger to nose test with his left hand.  He missed his nose with his right hand.

Wilmer was very belligerent during the tests.  He did not want to walk.  It appeared that "he didn't quite understand what he should do."

After administering the field sobriety tests, Staff Sergeant McDonald formed the opinion that Wilmer was intoxicated and unable to drive a vehicle.

Wilmer was arrested at this time and advised of his constitutional rights.  Wilmer was advised of Washington's implied consent law.  He agreed to submit to a breathalyzer test.

At about 5:00 a.m., Staff Sergeant McDonald and Sergeant Robert Lee Brower attempted to administer a breathalyzer test at McChord Air Force Base.  The machine did not function properly.

Staff Sergeant McDonald telephoned Fort Lewis to request the use of their breathalyzer.  Wilmer agreed to go to Fort Lewis to take a breathalyzer test.  The trip to Fort Lewis took twenty minutes because it was snowing.  An additional twenty minutes elapsed before the breathalyzer test was administered.

Sergeant Brower testified that he has been certified by the State of Washington to administer a breathalyzer test.

The breathalyzer test was administered at 6:21 a.m.

The government offered the report of the person who calibrated the breathalyzer machine as part of the foundation for introducing the result obtained in the analysis of Wilmer's breath samples.  Wilmer's trial counsel objected on two grounds.  First, he argued that the results obtained from a breathalyzer test are inadmissible unless the person who calibrated the instrument is produced as a witness by the government.  Secondly, he argued that the calibration report was inadmissible in a criminal case under the exclusionary provisions of Rule 803(8) of the Federal Rules of Evidence because it contains matters observed by a law enforcement officer.  No objection was made to the admission of the evidence on constitutional grounds nor was any ques-

tion raised regarding the availability of the maintenance operator.

The government argued to the trial court that the calibration report was admissible under Rule 4.09(d) of the Washington Court Rules for Courts of Limited Jurisdiction because Wilmer failed to make a written demand upon the prosecution within seven days of trial to produce the maintenance operator. The objection was overruled. The maintenance operator's calibration report was received. The government did not call the maintenance operator as a witness.

The records custodian for breathalyzer maintenance testified that the calibration record was prepared by a State Patrol Officer on December 26, 1984, the date that she received it. She maintained the calibration certificate at all times after receiving it.

The breathalyzer test revealed that Wilmer had .14 blood alcohol. Sergeant Brower was asked if he formed an opinion as to Wilmer's state of sobriety and his ability to drive a car after he had seen the breathalyzer reading of .14. The officer replied: "No sir, the ability had already been determined basically by the field sobriety test that had been performed."

Military Policeman John Carl Frick testified that he observed Wilmer's performance of the field sobriety tests. Wilmer wabbled and swayed during the balance test. He weaved back and forth as he stood up. He was unsteady on his feet and swayed from side to side on the heel-to-toe test. The witness observed Wilmer miss his nose on the finger to nose test. He fumbled coins during the coin tests. Wilmer appeared to be in an "intoxicated stupor." Based on these observations, Officer Frick formed the opinion that Wilmer was "intoxicated and unfit for driving."

During oral argument Wilmer's counsel stated as follows:

As to the other two charges, that is DWI and driving under suspension, I am fully willing to give them all the elements at this point of their case as far as intoxication, as far as having a suspension, everything except driving.

Wilmer's attorney then challenged the sufficiency of evidence to show that Wilmer was driving. He argued there was a reasonable doubt whether Wilmer and the woman in the car changed places.

## II. ISSUES ON APPEAL

In his brief before this court, Wilmer seeks reversal on the following grounds:

One. The trial court erred in applying Rule 4.09 of the Washington Court Rules, which requires a demand for the production at trial of the maintenance operator of a breathalyzer machine, in overruling Wilmer's objection to the admission of the calibration certificate.[4]

Two. The evidence is insufficient to permit the trier of fact to find beyond a reasonable doubt that Wilmer was driving the vehicle immediately prior to his arrest.

We discuss each issue under separate headings.

## III. DISCUSSION

### A. Applicable Rules of Procedure and Evidence Under The Assimilative Crimes Act

Wilmer contends that the trial court erred in applying the state of Washington's Justice Court Criminal Rules in the trial of this matter. We agree.

This issue of which rule of evidence should be applied in a federal court in a prosecution under the Assimilative Crimes

4. Rule 4.09(d)(1) of the Justice Court Criminal Rules provides as follows:

Admission of Certificate. In the absence of a request to produce a Breathalyzer maintenance operator made at least 7 days prior to trial or such lesser time as the court deems proper, certificates in the following form are admissible in any court proceeding held pursuant to RCW 46.61.506 for the purpose of determining whether a person was operating or in actual physical control of a motor vehicle while under the influence of intoxicating liquors. . . .

Act presents a question of law we review *de novo.* *United States v. Kearney,* 750 F.2d 787, 789 (9th Cir.1984).

The question has not been previously presented to this court. The Fourth Circuit, however, considered this issue in *Kay v. United States,* 255 F.2d 476 (4th Cir.), *cert. denied,* 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958). The *Kay* court, relying on Rule 26 of the Federal Rules of Crim. Proc., held, "[t]he [Assimilative Crimes] Act, however, does not generally adopt state procedures.... and federal, rather than state, rules of evidence are applicable under the Act." *Id.* at 479. We agree with the Fourth Circuit's analysis of this issue.

The Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13 "subjects persons on federal lands to ... prosecution in federal court for violations of criminal statutes of the state in which the federal lands are located." *United States v. Binder,* 769 F.2d 595, 600 (9th Cir.1985) (quoting *United States v. Kiliz,* 694 F.2d 628, 629 (9th Cir.1982)). In such prosecutions, we apply "state substantive *criminal law* as federal substantive law." *United States v. Kearney,* 750 F.2d at 789 (emphasis added). The Assimilative Crimes Act does not require the adoption of state procedural rules. *Id.*

Criminal proceedings in federal courts are governed by the Federal Rules of Criminal Procedure For The United States District Courts. Rule 1 of the Rules of Criminal Procedure provides in pertinent part as follows: "These rules govern the procedure in all criminal proceedings in the courts of the United States ..."

Rule 26 of the Rules of Criminal Procedure provides that in criminal trials, "the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an Act of Congress, or by these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court." Fed.R.Crim.P. 26. The note of the advisory committee explains the purpose of Rule 26 as follows:

This rule differs from the corresponding rule for civil cases (Federal Rules of Civil Procedure, Rule 43(a), 28 U.S.C., Appendix), in that this rule contemplates a uniform body of rules of evidence to govern in criminal trials in the Federal courts, while the rule for civil cases prescribes partial conformity to State law and, therefore, results in divergence as between various districts.

The advisory committee also explains that

[Rule 26] is based on *Funk v. United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, and *Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617, which indicated that in the absence of statute the Federal courts in criminal cases are not bound by the State law of evidence ...

The Assimilative Crimes Act is silent as to the rules of evidence which are applicable in prosecutions in federal courts under this statute. Therefore, Rule 26 of the Federal Rules of Criminal Procedure requires that we apply the Federal Rules of Evidence. Accordingly, the trial court erred in applying Rule 4.09 of the Justice Court Criminal Rules. Under Rule 52 of the Federal Rules of Criminal Procedure, we may disregard any error which does not affect substantial rights. Fed.R.Crim.P. 52. The court's error was harmless because evidence of the maintenance officer's calibration certificate was admissible under Rule 803(8).

Wilmer argues that the calibration report was not admissible as a public record under Rule 803(8)(B) because reports of a breathalyzer maintenance operator are excluded from this exception to the hearsay rule. He relies on *United States v. Oates,* 560 F.2d 45 (2d Cir.1977) for this proposition. We expressly rejected adoption of the reasoning set forth in *Oates* in *United States v. Hernandez-Rojas,* 617 F.2d 533, 534–35 (9th Cir.), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980). In *United States v. Orozco,* 590 F.2d 789 (9th Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979), we held that the exclusionary provisions of

Rule 803(8)(B) were intended to apply to observations made by law enforcement officials at the scene of a crime or the apprehension of the accused and not "records of routine, nonadversarial matters" made in a nonadversarial setting. *Id.* at 793.

More recently, in *United States v. Gilbert,* 774 F.2d 962, 965 (9th Cir.1985), we held that a criminologist's notations on a fingerprint card were admissible under Rule 803(8)(B). We observed that the report of an examination of a latent fingerprint was routine and "ministerial, objective, and nonevaluative." *Id.* at 965. Similarly, the calibration report of a breathalyzer maintenance operator is a routine act far removed from the adversarial nature of the on-the-scene investigative report of a crime by a police officer whose perceptions might be clouded and untrustworthy. *See United States v. Hernandez-Rojas,* 617 F.2d at 535. (The law enforcement exception is inapplicable to an immigration officer's notation in a warrant of deportation.)

The trial court did not abuse its discretion in admitting the calibration certificate. The court's error in relying on Washington law in overruling Wilmer's objection was harmless because the evidence was admissible under Rule 803(8)(B).

Wilmer also claims that his sixth amendment right to confrontation was violated by the failure of the government to call the breathalyzer maintenance operator. Wilmer correctly notes that the prosecution failed to show that the witness was unavailable.

■ We have determined that the calibration certificate was admissible under Rule 803(8)(B). A hearsay statement admissible under a firmly rooted exception to the hearsay rule may nevertheless violate the confrontation clause. *Dutton v. Evans,* 400 U.S. 74, 82, 91 S.Ct. 210, 216, 27 L.Ed.2d 213 (1970); *United States v. Huber,* 772 F.2d 585, 588 (9th Cir.1985); *United States v. Bernard S.,* 795 F.2d 749, 754 (9th Cir.1986). In *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the Supreme Court stated: "[W]hen a hearsay declarant is not present

for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable."

In *United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Supreme Court instructed that the unavailability requirement discussed in *Roberts* was applicable to the admission of former trial testimony. The Court stated: *"Roberts* must be read consistently with the question it answered, the authority it cited, and its own facts." *Id.* 106 S.Ct. at 1126.

In *Inadi,* the Supreme Court held that the unavailability rule did not apply to co-conspirators' out-of-court statements. *Id.* The Supreme Court instructed that *"Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable." *Id.*

*Inadi* teaches us that the question whether a showing of unavailability is mandated by the sixth amendment will depend on the nature of the hearsay exception.

■ We need not decide whether unavailability must be shown before evidence is admissible under the public records exception to the hearsay rule because confrontation clause violations are subject to harmless error analysis. *United States v. Bernard S.,* 795 F.2d 749 (9th Cir.1986). The admission of the public records in this case does not require reversal if the error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *United States v. Bernard S.,* 795 F.2d 749 (9th Cir.1986).

Whether a violation of the confrontation clause is harmless depends on a variety of factors including: (1) the importance of the evidence to the prosecution's case; (2) whether the evidence was cumulative; (3) the presence of corroborating evidence; (4) the overall strength of the prosecution's case.

*United States v. Bernard S.,* 795 F.2d at 756.

In the matter before us, overwhelming evidence of Wilmer's intoxication was presented to the court through the testimony of the Air Force officers who observed the field sobriety tests. He was described as being belligerent, confused and unable to stand or walk without staggering and swaying. The Air Force officers testified that they formed the opinion that Wilmer was intoxicated *before* the breathalyzer test was administered. Thus, the breathalyzer test results were cumulative and corroborative. The prosecution's case was convincing and uncontradicted. During oral argument, Wilmer's attorney conceded "all the elements of [the government's] case as far as intoxication." This judicial admission amply demonstrates the strength of the evidence of intoxication. *See* 4 J. Wigmore, *Wigmore on Evidence,* § 1063 (Chadbourn rev.1972).

We are convinced that any error in admission of the maintenance operator's certificate was harmless beyond a reasonable doubt.

### B. Proof That Wilmer Was The Driver

Wilmer contends the evidence is insufficient to prove that he was the driver of the car. Wilmer argues that Staff Sergeant McDonald testified that he could not see the driver of the car when it was in motion.

In reviewing a challenge that the evidence was insufficient, we must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Douglass,* 780 F.2d 1472, 1476 (9th Cir.1986).

 Under Washington law, the prosecution must show that the defendant operated or was in actual physical control of the car to prove that he was driving while intoxicated. *State v. Komoto,* 40 Wash. App. 200, 205, 697 P.2d 1025, 1029, *cert. denied,* — U.S. —, 106 S.Ct. 572, 88 L.Ed.2d 556 (1985). The presence of the defendant in the driver's seat of the car is circumstantial evidence that he was the driver of the car. "[C]ircumstantial evidence permits a legitimate inference ... that the defendant was in actual physical control." *State v. Smelter,* 36 Wash.App. 439, 445, 674 P.2d 690, 693 (1984).

■ Wilmer was seated behind the wheel of the car when the police officer approached. This evidence is sufficient to support an inference that he was driving. We note also that Staff Sergeant McDonald testified that he thought he saw Wilmer's arm motioning to him from the driver's window when the car was moving. This evidence was received without objection. Sufficient evidence was presented to convince a rational trier of fact that Wilmer was the driver of the car.

The judgment is AFFIRMED.