**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William L. HAYES,**
**Defendant–Appellant.**

**No. 87–1499.**

United States Court of Appeals,
Tenth Circuit.

Nov. 23, 1988.

William A. Cohan, Denver, Colo. (Darold W. Killmer, Denver, Colo., was also on the brief), for defendant-appellant.

James K. Bredar, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., was also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and SETH and McKAY, Circuit Judges.

HOLLOWAY, Chief Judge.

Defendant Hayes was charged in a two count indictment with willful income tax evasion, a violation of 26 U.S.C. § 7201 (1982). The jury acquitted him of the charge contained in count I, but found him guilty on count II of the lesser included offense of willful failure to file an income tax return for 1981, a violation of 26 U.S.C. § 7203 (1982).[1] He argues: (1) that the trial court erred in admitting computer data evidence which showed that he failed to file an income tax return for the 1981

---

1. Hayes' sentence was suspended and he was placed on probation for five years with this condition: that within 60 days he file a U.S. tax return with the I.R.S. and the probation department for each year that no return was filed to the time of his conviction. Hayes filed a timely notice of appeal. On July 1, 1987, defendant's Hayes' probation was revoked for failure to file the returns and he was sentenced to one year's imprisonment and fined $10,000.00. He was granted bail pending appeal.

tax year; and (2) that he was prejudiced when the trial court denied his motion to sever. We affirm.

## I

### *Factual Background*

Considered in the light most favorable to the government, as it must be after a guilty verdict, the evidence shows the following. In 1978, 1979, and 1980 defendant Hayes filed individual income tax returns. He had income again in 1981, *see* V R. 22, but did not file an income tax return. III R. 49; V R. 21–22. Instead, he indicated to the Internal Revenue Service (I.R.S.), in response to a delinquency notice, that he was "not liable this period." III R. 49–50.

There is a dispute regarding the admissibility of the evidence which indicates that Hayes failed to file a return for the 1981 tax year. Dorothy Vest, an I.R.S. tax examiner, testified that she had searched Hayes' tax records for the 1978, 1979, 1980, and 1981 tax years and had determined that while Hayes had filed returns for the 1978, 1979, and 1980 tax years, he had not filed a return for the 1981 tax year. III R. 45, 49. Vest was the custodian of the records and she testified that they were kept in the ordinary and regular course of business. III R. 41–43, 48. During her search Vest obtained Certificates of Assessments and Payments for the 1978, 1979, 1980, and 1981 tax years. Those certificates reflected Hayes' tax information for the years in question and were admitted at trial as Government's exhibit 5. Hayes strenuously objected to the admission of the certificates (the computer data evidence) both prior to and during trial. They show that he failed to file a return for the 1981 tax year. III R. 49.

Later, during his cross examination, Hayes testified that that he had not filed a return for 1981. He also admitted that he had had income during the 1981 tax year. Hayes disagreed with the way the "federal income tax was administered" and did not believe he was required to pay taxes. V R. 21–23.

Before the 1981 tax year, Hayes had relied on the advice of several "tax experts," including Don Perry, Don Bearnson, and Lowell Anderson. In 1980 he invested $5,000 in foreign trust organizations on the advice of Perry and Bearnson. Anderson had assured him that the trust organizations were a legal way to reduce his tax liability. IV R. 29–30. These investments form the basis of Hayes' defense to count I, that he did not willfully seek to evade taxes.

Bearnson referred Hayes to another "tax expert," John Grandbouche, who advised Hayes that "he had the basis to believe that certain individuals, private people of this country, had no constitutional—or had no basis to pay income tax depending upon how they were situated in their lives." IV R. 83. Hayes paid "$120" for a year's membership in a "Commodity Exchange," and in return was given a number of books about the legalities of taxation as well as the right to use the Exchange. IV R. 85–88. Grandbouche also gave Hayes a number of United States Supreme Court cases to read regarding the constitutionality of taxation. IV R. 94–115. After reading these materials Hayes decided he was not a person constitutionally required to file income taxes. IV R. 121.

Before trial Hayes filed a motion to sever under Fed.R.Crim.P. 14. Hayes wanted a separate trial on count II so that he could testify at trial on count I (that he relied upon "tax experts" and did not willfully evade taxes) and exercise his right not to testify on count II (leaving the Government to its own proof on the issue of failure to file). The trial court denied Hayes' motion to sever in a minute order.

Hayes also filed a pre-trial motion to suppress the computer data evidence. The trial court denied that motion, relying on Fed.R.Evid. 803(6) and noting that Government Exh. 5 would only corroborate the testimony of I.R.S. employees. I R. Exh. 4. The defendant renewed the motion to suppress the computer data evidence on the morning of trial and a lengthy suppression hearing was held. At the hearing the defendant presented some evidence intended to show that the I.R.S. record keeping system is unreliable and untrustworthy. The

evidence, much of which was compiled by Arthur Howe of the Philadelphia Inquirer and published in a series of articles in 1985, detailed large numbers of failures of the I.R.S. record keeping and computer system generally, such as a loss of tax filings in 1985, the deliberate destruction of records, the mistaken destruction of tax returns, the erroneous granting of refunds, and typographical errors. *See* II R. 8–20. Upholding its earlier ruling, the court reasoned that before the entire I.R.S. record keeping system could be shown unreliable or untrustworthy, some comparative evidence would have to be offered to show, for example, the percentage of lost documents. II R. 23.

An objection to the computer data evidence was raised a third time during the testimony of Vest. By that time I.R.S. employee Steven Ray had testified generally about the procedures followed at the Ogden, Utah Regional Service Center, the place where Hayes' returns had been sent. On cross examination Ray testified that it would be "very unlikely" for a tax return to just disappear, that he was not aware of any documents that had been destroyed by employees, that he was not aware of any data entry problems, and that he was not aware of computer programs running incorrectly. *See* III R. 22, 35–36. Based upon this testimony and the foundation which had been laid, the trial court overruled the objection and admitted the evidence.

## II

### *Analysis*

#### A

#### *Admissibility Of The Computer Data Evidence*

 The trial court admitted the computer data evidence under Fed.R.Evid. 803(6).

Hayes does not dispute the well established proposition that "computer data compilations may constitute business records for purposes of Rule 803(6),[2] and may be admitted at trial if a proper foundation is established." *United States v. Croft*, 750 F.2d 1354, 1364 (7th Cir.1984) (citing *United States v. Young Brothers, Inc.*, 728 F.2d 682, 694 (5th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984)). Vest attested to the authenticity of Government Exhibit 5 and laid the foundation for its admission. *Young*, 728 F.2d at 694. Both Vest and Ray testified that Hayes' tax records were kept in the ordinary course of business and that it was the regular practice of the I.R.S. to keep such records. *See United States v. Bowers*, 593 F.2d 376, 380 (10th Cir.1979), *cert. denied*, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979) (records must be kept in the regular course of business activity). A proper foundation for the admission of the evidence was laid.

 Hayes argues, however, that the computer data evidence is untrustworthy and therefore inadmissible under Rule 803(6). It is true that business records are inadmissible if the source of information or the method or the circumstances of preparation indicate a lack of trustworthiness. *Croft*, 750 F.2d at 1364. *Accord United States v. Hines*, 564 F.2d 925 (10th Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770 (1978). Here the trial court found that the general evidence presented by the defendant at the suppression hearing, even if it is all accepted as true, does not lead to the conclusion that the I.R.S. record keeping system is unreliable or untrustworthy. II R. 23. Comparative data (e.g., the number of incorrect

**2.** In pertinent part, Fed.R.Evid. 803 provides that:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(6) **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the circumstances of preparation indicate lack of trustworthiness.

refunds compared to the number of correct refunds) is needed before such general evidence can have any force and no comparative data was offered at trial. The testimony of Vest and Ray, which related specifically to the procedures at the Ogden, Utah Center and the search done in this case, provided an ample factual basis for the trial court to find that the source of information and method and circumstances of preparation were not untrustworthy. We find no abuse of discretion in the admission of the computer data evidence. *See United States v. Turner,* 799 F.2d 627, 630 (10th Cir.1986).

■ The real question regarding the computer data evidence is whether it should have been excluded under the rationale of *United States v. Oates,* 560 F.2d 45 (2nd Cir.1977). There the court held that "police and evaluative reports not satisfying the standards of FRE 803(8)(B) and (C) may not qualify for admission under FRE 803(6) or any of the other exceptions to the hearsay rule." *Id.* at 77. The court admitted exhibits purporting to be the official report of a United States Custom Service Chemist, who had concluded that the white powdery substance which he had analyzed was heroin. *Id.* at 63. The chemist did not testify, but the documents were admitted as business records under Rule 803(6), with reliance also placed on Rules 803(8)[3] and 803(24). The Second Circuit held that the chemist's report and worksheet constituted a factual finding resulting from an investigation made pursuant to authority granted by law under Rule 803(8)(C). *Id.* at 67. After a discussion of legislative history the court concluded that the restrictions of Rule 803(8)(B) and (C) precluded admission of the report under Rule 803(6) and all other hearsay exceptions as well. *Id.* at 77, 83–84.

Relying on *United States v. Ruffin,* 575 F.2d 346 (2nd Cir.1977), which in dicta discussed *Oates* in the tax context, Hayes argues that the computer data evidence is inadmissible under Rule 803(8)(B). In dicta the court reasoned that I.R.S. personnel who gather information routinely used in criminal prosecutions are performing what can legitimately be characterized as a law enforcement function within the meaning of Fed.R.Evid. 803(8)(B). *Id.* at 356. Contending that *Ruffin* establishes that I.R.S. personnel perform a law enforcement function within the meaning of Rule 803(8), Hayes argues that the computer data evidence should have been excluded under the rationale of *Oates,* notwithstanding its admissibility under Rule 803(6).

*Oates* has been criticized by both courts and commentators as an unduly broad interpretation of Rule 803(8). *See e.g., United States v. Picciandra,* 788 F.2d 39, 44 (1st Cir.1986), *cert. denied,* 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986); *United States v. Metzger,* 778 F.2d 1195, 1201 (6th Cir.1985), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(8)[04] at 258–262 (1985). The Fifth and Ninth Circuits have rejected the breadth of *Oates,* and reason that the exclusionary provision of Rule 803(8)(B) was only intended to apply to observations made by law enforcement officials at the scene of a crime or in investigating a crime, and not to reports of routine matters made in nonadversarial settings. *United States v. Quezada,* 754 F.2d 1190, 1193–94 (5th Cir.1985); *see also United States v. Wilmer,* 799 F.2d 495, 500–501 (9th Cir.1986), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1986) (citing *United States v. Hernandez Rojas,* 617 F.2d 533, 534–535

---

**3.** Rule 803(8) provides that:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . . .

(8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

(9th Cir.1980), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980)). And the Second Circuit itself confined *Oates* in *United States v. Yakobov,* 712 F.2d 20, 24–27 (2nd Cir.1983), where it held that "*Oates* should not be extended to [exclude materials admissible under] Rule 803(10)." *Id.* at 26. These criticisms aside, *Oates* simply does not apply here because Vest, the I.R.S. employee who searched Hayes' files and obtained the computer documents, testified at trial.

Rule 803(8)(C) does not compel the exclusion of documents properly admitted under Rule 803(6) where the authoring officer or investigator testifies. *See United States v. King,* 613 F.2d 670, 672–673 (7th Cir.1980); *United States v. Sawyer,* 607 F.2d 1190, 1193 (7th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1338, 63 L.Ed.2d 776 (1980). *Cf. Chaney v. Brown,* 730 F.2d 1334, 1354 n. 26 (10th Cir.1984), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984). This is because such testimony protects against the loss of an accused's confrontation rights, the underlying rationale for Rule 803(8) and the basis of the court's concern in *Oates. See Oates,* 560 F.2d at 78 (the fear of the draftsmen that interference with an accused's right to confrontation would occur was the reason why in criminal cases evaluative reports and law enforcement reports were expressly denied the benefit to which they might otherwise be entitled).

In *Oates,* the Custom Service Chemist who analyzed the heroin and prepared the report did not testify (although ·another chemist did) and could not, therefore, be questioned about the source of information or the specific circumstances of preparation. *Id.* at 64. Here, Vest testified and was cross examined at some length. III R. 54–69. She checked Hayes' records personally and prepared Government exhibit 5. III R. 45–48. The circumstances surrounding the preparation of Government exhibit 5 were probed, *see* III R. 49–50, and there was no loss of confrontation rights.

Citing *United States v. Bohrer,* 807 F.2d 159, 162–163 (10th Cir.1986), Hayes argues that I.R.S. agents are law enforcement personnel under the holding in *Oates* so that the computer data evidence must be excluded under Rule 803(8)(B). In *Bohrer* we did say that IRS agents appear to be law enforcement personnel under the test proposed in *Oates. Id.* at 162. There, however, an I.R.S. "contact card" which contained evidence of the defendant's failure to file was admitted at trial. We held that the admission of the contact card was improper, but not under *Oates,* but rather, because it had been maintained for the purpose of litigation by the party offering it, in violation of the rule enunciated in *Palmer v. Hoffman,* 318 U.S. 109, 113–115, 63 S.Ct. 477, 480–481, 87 L.Ed. 645 (1943). *Id.* at 162. We specifically held that "we need not go so far as the court did in *Oates* ... to find the admission of the contact card improper in this case." *Bohrer,* 807 F.2d at 162. Thus, *Bohrer* is not persuasive here.

*Bohrer* is distinguishable in another important respect. In *Bohrer* there was evidence that the contact card was untrustworthy, that the I.R.S. agent who testified that Mr. Bohrer had told him that he had not filed a return had fabricated his testimony. *Id.* We noted that we had "serious problems" with the admission of the contact card under the business records hearsay exception. *Id.* In this respect *Bohrer* is analogous to *Oates,* where the chemist's report also lacked trustworthiness. *Oates,* 560 F.2d at 64–65. As noted earlier, a document that is untrustworthy should not be admitted under Rule 803(6). *See Croft,* 750 F.2d at 1364. Here, however, there was no specific evidence that Government Exhibit 5 was untrustworthy. There was only the general evidence about the asserted unreliability of the IRS records, evidence the trial court rejected as insufficient, as we have already explained.

Here the trial court properly admitted the evidence under Rule 803(6) and we affirm on that basis. The government also offered the evidence under Rule 803(10) as a certification of the absence of public record or entry, and argues on appeal that it is admissible under that rule as well. However the trial court did not determine

whether the evidence was admissible under Rule 803(10).[4] We therefore do not go into the merits of the admissibility of the exhibit on this further ground.

## B

### Denial of the Motion to Sever

The trial court denied Hayes' motion to sever in a minute order. I R. Ex. 7. Hayes wanted a separate trial on the two counts so that he could testify in the trial on count I (and explain his reliance on the "tax experts" to disprove the element of willfullness), but not on Count II (leaving the Government on its own to prove failure to file). When the motion was denied and Hayes took the stand to testify that he had relied upon the "tax experts" to set up trusts in order to reduce his tax liability, he was cross examined about his failure to file a 1981 return and had to admit that he had in fact not filed. V R. 21–22.

Rule 14 of the Federal Rules of Criminal Procedure allows the trial court to order separate trials of counts otherwise properly joined under Rule 8 if joinder would prejudice the defendant.[5] The decision to grant severance and order separate trials is "within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice." *United States v. Valentine*, 706 F.2d 282, 289–290 (10th Cir.1983) (citing *United States v. Strand*, 617 F.2d 571, 575 (10th Cir.1980), *cert. denied*, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980)). The defendant's burden to show an abuse of discretion is a difficult one. *Id.* at 290 (citing *United States v. Van Scoy*, 482 F.2d 347 (10th Cir.1973)).

We have laid down guidelines for a trial court to consider when a defendant wishes to testify on one count and remain silent as to another:

> [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administation" against the defendant's interest in having a free choice with respect to testifying.

*Valentine*, 706 F.2d at 291 (quoting *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970)).

Our resolution of the evidentiary issues in this case substantially undercuts Hayes' argument that the trial court abused its discretion. Had separate trials been granted, and had Hayes not testified on Count II, the testimony of Vest and the computer data evidence would have been sufficient for a jury to find that Hayes had failed to file a return in 1981. Since the computer data evidence was properly admitted, there was no need for separate trials.

While separate trials might have increased Hayes' chances of acquittal by avoiding the damaging admission that Hayes failed to file, a better chance for acquittal by separate trials of charges is

---

**4.** It is within the trial court's province to make preliminary determinations regarding the admissibility of evidence. Fed.R.Evid. 104(a) ("Preliminary questions concerning the ... admissibility of evidence shall be determined by the court...."). Here the court admitted the evidence only under Rule 803(6) and it did not pass on the admissibility of the exhibit under Rule 803(10) or consider the diligence of the search under the circumstances. *United States v. Yakobov*, 712 F.2d 20, 24 (2d Cir.1983) (diligence requirement is one of substance, not form).

**5.** In pertinent part, Rule 14 provides:

> **Rule 14. Relief from Prejudicial Joinder**
> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election of separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

not sufficient to require severance. *Strand,* 617 F.2d at 575. Given the other evidence of Hayes' failure to file, the trial court did not abuse its discretion in denying the motion.

AFFIRMED.