**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Maria OROZCO, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose LIVA–CORONA,**
**Defendant-Appellant.**

**Nos. 77–2241, 77–1711.**

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1979.

---

Harvey E. Byron, Los Angeles, Cal., Roger S. Hanson, Santa Ana, Cal., for defendant-appellant.

Cornel J. Price, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before CHOY and WALLACE, Circuit Judges, and TURRENTINE,* District Judge.

CHOY, Circuit Judge:

Appellants Jose Liva-Corona and Maria Orozco appeal from their convictions for possession of cocaine and heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). We affirm.

Around 4:45 A. M., Los Angeles Sheriff's deputies observed Liva-Corona sitting in an automobile parked in an area with a high incidence of residential burglaries and auto thefts. Upon seeing the patrol car, Liva-Corona quickly got out of his car, shut the door, and backed up to a retaining wall over which he appeared to throw an object. The deputies stopped to investigate. Although Liva-Corona indicated that he lived at the residence where the car was parked, his driver's license listed an address in another part of the city. At that point, Orozco got out of a parked car in the driveway of the residence and approached the deputies. She said that the residence was hers, that Liva-Corona was staying with her, and that she owned the cars. Orozco also said that she and Liva-Corona had just returned from a double date in the car in the driveway, but that she did not know the names of the couple they had been with. When Orozco opened her purse to obtain identification, one of the deputies observed several rolls of money.

Meanwhile, the other deputy had looked behind the retaining wall and had retrieved a semi-automatic pistol. The deputies informed one another of their discoveries and one deputy went to look through the passenger's window of the car parked on the street. On the floor of the car he observed eight packages bound tightly with tape. The packages were illuminated by the light of the open glove compartment. The other deputy looked through the driver's window of the car and noticed that some of the packages were labeled "coc" or "coca." The deputy entered the car and determined that the packages contained cocaine and heroin. Appellants were then arrested. A subsequent search of the impounded car revealed still more heroin concealed in a hidden compartment. At trial, a motion to suppress the evidence seized from the car was denied.

On appeal, appellants contend that the search and seizure violated the fourth amendment and that the evidence should have been suppressed. Appellants also contend that the trial court abused its discretion by admitting into evidence computer data cards from the Treasury Enforcement Communications System (TECS). The TECS cards indicated that the car in the driveway, said to have been used on a dou-

* The Honorable Howard B. Turrentine, United States District Judge for the Southern District of California, sitting by designation.

ble date in Los Angeles on the night of the arrest, had been recorded crossing the Mexican border at San Ysidro on the same night. Finally, appellant Orozco contends that there was insufficient evidence upon which to convict her.

*Search and Seizure*

■ Appellants claim that no probable cause existed for the search of the vehicle. Appellant Orozco relies on both state and federal standards in attacking the legality of the search.[1] However, under both California and federal law, the deputies' actions of stopping and questioning appellants were justified.

■ The officers were patrolling a high crime area in the early morning hours when they observed Liva-Corona's suspicious behavior and decided to investigate. A brief investigatory stop and detention may be based on less than would constitute probable cause for an arrest. *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Flores,* 12 Cal.3d 85, 92, 115 Cal. Rptr. 225, 228, 524 P.2d 353, 356 (1974); *People v. Hidalgo,* 78 Cal.App.3d 675, 687, 144 Cal.Rptr. 515, 522 (1978). In order for such a stop to be valid under California law, the officer must have a good faith suspicion or a rational belief that some criminality is afoot and that the suspect is connected with it. *Flores,* 12 Cal.3d at 91, 115 Cal.Rptr. at 228–29, 524 P.2d at 356. The federal rule requires that the officer have some reasonable or founded suspicion that illegal activity is occurring or is contemplated. *United States v. Brignoni-Ponce,* 422 U.S. 873, 880–81, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Avalos-Ochoa,* 557 F.2d 1299, 1301 (9th Cir.), *cert. denied,*

434 U.S. 974, 98 S.Ct. 532, 54 L.Ed.2d 466 (1977); *United States v. Rocha-Lopez,* 527 F.2d 476, 477–78 (9th Cir.), *cert. denied,* 425 U.S. 977, 96 S.Ct. 2181, 48 L.Ed.2d 802 (1976). As outlined above, the facts of the present case clearly meet both the California and federal standards.

■ Moreover, we find that the deputies were not conducting a "search" when they looked through the car windows. They were lawfully within the area, investigating the suspicious behavior of appellants. "It is well settled that visual observation by a law enforcement officer situated in a place where he has a right to be is not a search within the meaning of the fourth amendment." *United States v. Coplen,* 541 F.2d 211, 214 (9th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977); *see Wimberly v. Superior Court,* 16 Cal.3d 557, 564 n.2, 128 Cal. Rptr. 641, 645 n.2, 547 P.2d 417, 421 n.2 (1976); *People v. Rios,* 16 Cal.3d 351, 357, 128 Cal.Rptr. 5, 8, 546 P.2d 293, 296 (1976). The deputies' looking through the windows of a vehicle parked on a public street did not violate appellant's reasonable expectations of privacy; anyone walking past the vehicle could easily have observed the packages of cocaine and heroin. *See Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Coplen,* 541 F.2d at 214; *Ponce v. Craven,* 409 F.2d 621, 625 (9th Cir. 1969); *Wimberly,* 16 Cal.3d at 563–64 & n.2, 128 Cal.Rptr. at 644–45 & n.2, 547 P.2d at 420–21 & n.2.

■ Our final inquiry is whether, in light of the circumstances outlined above, the deputy's entry into the vehicle violated appellants' fourth amendment rights. It is clear that the recovered pistol, the rolls of money in Orozco's purse, and the eight

1. The traditional rule in this Circuit has been that a search or seizure by state officers must be judged by both state and federal standards in federal prosecutions. *See United States v. Solomon,* 528 F.2d 88, 90 (9th Cir. 1975); *United States v. Lovenguth,* 514 F.2d 96, 98 (9th Cir. 1975); *United States v. Walling,* 486 F.2d 229, 235 (9th Cir. 1973), *cert. denied,* 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974); *Wartson v. United States,* 400 F.2d 25, 27 (9th Cir. 1968), *cert. denied,* 396 U.S. 892, 90 S.Ct. 184, 24 L.Ed.2d 166 (1969). These cases were all tried before the effective date of the Federal Rules of Evidence, July 1, 1975. Therefore, the effect of the Federal Rules of Evidence, and particularly Rule 402, on the Ninth Circuit "dual test" rule need not be reached by this court in this case. We find that under both state and federal standards, the search of the vehicle was proper.

packages on the floor of the car, some marked "coc" or "coca," are more than sufficient for a finding of probable cause. Nonetheless, since this search was conducted without a warrant, we must decide whether there existed exigent circumstances to justify a warrantless search. *See Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Coplen,* 541 F.2d at 215; *People v. Dumas,* 9 Cal.3d 871, 882–85, 109 Cal.Rptr. 304, 311–13, 512 P.2d 1208, 1215–17 (1973); *People v. Laursen,* 8 Cal.3d 192, 201–02, 104 Cal.Rptr. 425, 430–31, 501 P.2d 1145, 1150–51 (1972), *appeal dismissed,* 412 U.S. 915, 93 S.Ct. 2738, 37 L.Ed.2d 142 (1973). We are persuaded that such circumstances existed here. The vehicle could easily have been moved and the contents hidden or destroyed. These factors justify a warrantless search. *See Coplen,* 541 F.2d at 215; *United States v. McClain,* 531 F.2d 431, 434 (9th Cir.), *cert. denied,* 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976); *Dumas,* 9 Cal.3d at 882–86, 109 Cal.Rptr. at 311–14, 512 P.2d at 1215–18; *Laursen,* 8 Cal.3d at 202, 104 Cal.Rptr. at 431, 501 P.2d at 1151.

Therefore, appellants' fourth amendment rights were not violated and the district court's denial of the motion to suppress was proper.

### Admission of TECS Cards

Appellants also contend that the district court abused its discretion in admitting TECS cards pursuant to Fed.R.Evid. 803(6). Rule 803(6) is the "business records" exception to the hearsay rule, which permits the introduction of certain records kept in the regular course of business.

At trial, customs officials explained the procedure for recording the license plate numbers of vehicles passing through the border at San Ysidro. The procedure is a relatively simple one. As vehicles approach the border station, the primary customs inspector enters the license plate number into a computer. The computer then scans its system to determine whether that license number has appeared within the previous 72-hour period.

While the district court admitted these computer cards under the "business records" exception, we feel that the proper inquiry is directed toward the "public records" exception of rule 803(8). While governmental functions could be included within the broad definition of "business" in rule 803(6), such a result is obviated by rule 803(8), which is the "business records" exception for public records such as those in issue here. *See United States v. American Cyanamid Co.* 427 F.Supp. 859, 867 (S.D.N.Y.1977); *Complaint of American Export Lines, Inc.,* 73 F.R.D. 454, 456 n.2 (S.D.N.Y. 1977). *But cf. Colvin v. United States,* 479 F.2d 998, 1002 (9th Cir. 1973) (dicta suggesting that police reports fall within both rule 803(6) and rule 803(8)).

The relevant portion of rule 803(8) allows admission of public records "setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . ." In excluding "matters observed by . . . law enforcement personnel" from the coverage of the exception, Congress did not intend to exclude records of routine, nonadversarial matters such as those in question here. The legislative history indicates that

> [o]stensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News 7051, 7064. The customs inspector is one of the "law enforcement personnel" included in rule 803(8). However, the simple recordation of license numbers of all vehicles which pass his station is not of the adversarial confrontation nature which might cloud his perception. *See J.* Weinstein & M. Berger, Weinstein's Evidence ¶ 803, at 16–21 (1975). The Second Circuit has noted that

[i]n adopting this exception, Congress was concerned about prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime. . . . The reports admitted here were not of this nature; they did not concern observations by the [police] of the appellants' commission of crimes. Rather, they simply related to the routine function of recording serial numbers . . . .

*United States v. Grady,* 544 F.2d 598, 604 (2d Cir. 1976).

 Therefore, the TECS cards were admissible "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8). There was testimony at trial that as the license numbers are entered, they appear on the computer's screen, allowing the inspector to see if a mistake has been made in his entry. The customs agents have no motive to fabricate entries into the computer and the possibility of an inaccurate entry is no greater here than it would be in any other recording system. The reliability of computers has been demonstrated in similar contexts. *See United States v. Scholle,* 553 F.2d 1109, 1124 (8th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *United States v. DeGeorgia,* 420 F.2d 889, 893 & n.11 (9th Cir. 1969). Since nothing about this recording procedure indicates a "lack of trustworthiness," we hold that the district court did not abuse its discretion in admitting the TECS cards into evidence.[2]

### Sufficiency of the Evidence

 Finally, appellant Orozco claims that there was insufficient evidence upon which to convict her. Considering the evidence in the light most favorable to the Government, we find the evidence is sufficient to sustain her conviction. *See Hamling v. United States,* 418 U.S. 87, 124, 94

S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Francisco,* 536 F.2d 1293, 1298 (9th Cir.), *cert. denied,* 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 312 (1976).

AFFIRMED.

---

**2.** We are bound to affirm even though the district court relied on the "business records" exception rather than the "public records" exception. "In reviewing the decision of a lower court, we must affirm if the result is correct, although the lower court relied upon a wrong ground or gave a wrong reason . . . ." *United States v. Best,* 573 F.2d 1095, 1100 (9th Cir. 1978).