UNITED STATES of America, Plaintiff-Appellee,

v.

Alice Elizabeth GILBERT, Defendant-Appellant.

No. 84–3123.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1985.

Decided Oct. 21, 1985.

Baron C. Sheldahl, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Ronald Hoevet, Douglas, A. Stringer, Portland, Or., for defendant-appellant.

Before BROWNING, Chief Judge, ALARCON, Circuit Judge, and THOMPSON *, District Judge.

PER CURIAM:

Alice Gilbert appeals her conviction for conspiring to possess with intent to distribute and distributing heroin, arguing the district court erred in denying her motion to suppress evidence found during a search of her mobile home and abused its discretion in admitting a latent fingerprint card. We affirm.

## I.

Federal marshals arrested Gilbert pursuant to an outstanding warrant. Appellant was arrested in her car wearing only shorts and a loose blouse. She asked the marshals to bring her some clothes from her mobile home or trailer some miles away because she did not want to go to jail dressed as she was. She told them the clothes were on the bed in the bedroom of the trailer.

While other officers took appellant to the station, the marshals who arrested her and three others went to her trailer to obtain the clothes. They entered the trailer, checked to make sure no one was there, and located and removed the clothing. While checking the trailer they saw and seized a triple beam scale and a quantity of mannitol (a common dilutant of heroin).

Appellant moved to suppress the scale and the mannitol. The district court denied the motion, stating: "what [the officers] did wasn't a search at all [but] was a granting of a request which was reason-

---

* Honorable Bruce R. Thompson, Senior Judge, United States District Court for the District of Oregon, sitting by designation.

able under the circumstances." The court found the evidence had been seized when seen in "plain view" during a "fully justifie[d] ... protective sweep." Alternatively, the court found the officers acted with appellant's consent.

■ Appellant's request that the officers obtain her clothing necessarily implied consent to enter the bedroom in which she said the clothing was located. Appellant argues her consent was "mere submission to a claim of lawful authority," *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983) (plurality opinion). The district court's contrary finding is not clearly erroneous. The request implying consent was entirely gratuitous and wholly unrelated to the officers' questioning.

■ Once lawfully in the trailer, the officers were "permit[ted to conduct] a protective search of part or all of the residence [if] the officers reasonably believe[d] that there might be other persons on the premises who could pose some danger to them." *United States v. Gardner*, 627 F.2d 906, 909-10 (9th Cir.1980) (footnote omitted). The marshals had information that appellant might be in the company of another fugitive who was reported to be armed. A car not belonging to appellant was parked in front of appellant's trailer; a check with the Department of Motor Vehicles revealed no record of registration. The two narcotics officers who had watched the trailer for an hour before the marshals arrived "suspected movement inside." These " 'specific and articulable facts' " supported the reasonableness of the officers' belief danger might lurk in the trailer. *United States v. Whitten*, 706 F.2d 1000, 1014 (9th Cir.1983) *quoting United States v. Dugger*, 603 F.2d 97, 99 (9th Cir.1979).

■ The district court's finding that the scale and the mannitol were in "plain view" was supported by testimony that the articles were on the floor in an open box in "a storage area which precede[d] the main bedroom in the main hallway." The finding is not clearly erroneous simply because the articles were not seen by the first officer who looked into the room on a quick initial check, but were noticed by the second officer who double-checked the room a few minutes later pursuant to customary procedure.

## II.

In a search of a rented storage facility pursuant to a warrant, police seized a quantity of heroin, a plastic box, and two wooden statuettes used in smuggling the drug. The statuettes were delivered to the Arizona Department of Public Safety with the request that they be examined for latent fingerprints. At trial the government introduced a card taken from the files of the Department of Public Safety to which was attached a piece of tape bearing the impression of a fingerprint and a notation that the fingerprint had been "lifted" from one of the wooden statuettes by Criminologist Sally Jones, an employee of the Department. The government also introduced the testimony of Stephen Anderson, a second criminologist in the Department, that he had compared the fingerprint on the card with appellant's fingerprints, and the print on the card was made by appellant's left thumb.

■ Appellant objected to the introduction of the card on the ground that the note on the card that the print had been lifted from the statuette was hearsay. We agree with the district court that the statement was admissible under the exception to the hearsay rule codified in Fed.R.Evid. 803(8)(B), which allows admission of records of public offices setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel."

Appellant argues Ms. Jones's notation that the print had been taken from the statuette falls within the express exclusion of reports of matters observed by law enforcement personnel. As we said in *United States v. Hernandez-Rojas*, 617 F.2d 533, 534–35 (9th Cir.1980):

Although some courts have inflexibly applied the exception to all law enforcement records, *see United States v. Oates*, 560 F.2d 45, 83–84 (2d Cir.1977), this court has looked to the purpose of the law enforcement exception in determining the admissibility of a public record. *See United States v. Orozco*, 590 F.2d 789 (9th Cir.), *cert. denied*, 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709 (1978); 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979). In *Orozco*, ... [t]he court noted that the purpose of the exception was to exclude observations made by officials at the scene of the crime or apprehension, because observations made in an adversarial setting are less reliable than observations made by public officials in other situations. *Id.* at 793. Congress, however, did not intend to exclude records of routine, non-adversarial matters. *Id.*

Mr. Peterson testified that the card was one of "tens of thousands" of reports of examinations for latent fingerprints made by the Arizona Department of Public Safety. The routine act of reporting a latent print on an object is no different from inventorying items seized; it is ministerial, objective, and nonevaluative. "The recordation of a routine matter," such as the place where the attached print was found "is plainly not of the adversarial nature that might 'cloud the perception' of the law enforcement official." *Hernandez-Rojas*, 617 F.2d at 535, quoting *Orozco*, 590 F.2d at 793. The fact that Ms. Jones knew the examination was requested as a part of a criminal investigation and the information disclosed might be used against a person accused of a crime could not affect the reliability of such a report. *See United States v. Neff*, 615 F.2d 1235, 1242 n. 7 (9th Cir.1980).

Appellant argues Ms. Jones' notation on the report was nonetheless inadmissible because, in the closing words of Fed.R.Evid. 803(8), "other circumstances indicate[d] lack of trustworthiness." At an earlier trial of another defendant charged with participating in the same narcotics distribution scheme, Ms. Jones testified she was asked to check a plastic box and statuettes of an elephant and a hand for latent fingerprints. She testified she found two prints on the elephant statuette. When asked, "Did you recover any latents besides these two?" she replied, "I obtained latents off of the plastic box." Although Ms. Jones did not mention the print she reported finding on the statuette of the hand, she was not specifically asked whether she had found such a print. Absent a specific question her oversight is understandable. The trial in which she testified did not involve appellant, but another defendant whose fingerprints did not appear on the statuette of the hand.

Admission of the report did not violate appellant's right to confront the witness against her. The evidence met the test of necessity since Ms. Jones had died before appellant's trial; it met the test of *reliability* for reasons already stated. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980).

AFFIRMED.