**UNITED STATES of America, Appellee,**

v.

**Nick Cloyd ENTERLINE, Appellant.**

**No. 89–1582.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1989.

Decided Jan. 18, 1990.

---

288

Matthew Horan, Fort Smith, Ark., for appellant.

William Cromwell, Fort Smith, Ark., for appellee.

Before FAGG and BEAM, Circuit Judges, and HENLEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Nick Cloyd Enterline appeals from his conviction by a jury on two counts of transporting in interstate commerce a motor vehicle, knowing that it was stolen, in violation of 18 U.S.C. §§ 2312 and 2(b) (1988), and on two counts of possessing with the intent to sell a motor vehicle, knowing that its identification number had been removed or otherwise altered, in violation of 18 U.S.C. § 2321 (1988). Enterline was acquitted of count five of receiving or selling a motor vehicle, knowing that it was stolen, in violation of 18 U.S.C. § 2313 (1988). The district court sentenced Enterline to fifteen years in prison. We affirm.

## I. BACKGROUND

Enterline was indicted by a grand jury on the five counts on November 16, 1988. From 1981 until his indictment, Enterline operated a vehicle salvage business from a lot in Fayetteville, Arkansas. A building on the lot also served as his residence. The auto salvage business provided Enterline with the cover for the changeover scheme in which the government implicated him. Enterline would purchase a wrecked or salvaged vehicle, and would have stolen for him an automobile of the same year, make and model. He would then attach the vehicle identification number from the salvaged car to the stolen vehicle, thus providing a new identity for the machine. The automobile would then be registered. Specifically, the indictment charged the following: counts one and two charged the transportation of and possession, with the intent to sell, of a 1984 Cadillac Seville; count three charged the transportation of a 1987 Chevrolet Astro van; count four charged the possession, with the intent to sell, of a 1986 Chevrolet Camaro IROC; and count five charged the possession of a 1985 Chevrolet Suburban.

The trial involved complicated and lengthy testimony from more than twenty-five government witnesses. Each related, piecemeal, facts involving Enterline's dealings with each vehicle charged in the changeover scheme. The government's case made use of the testimony of four convicted car thieves who testified that they stole the particular vehicles charged in the indictment at the specific request of Enterline. Enterline denied that he ordered any of the vehicles stolen, and argued that all were legitimately purchased and sold as part of his salvage business.

## II. DISCUSSION

### A. Hearsay objection to testimony

On appeal, Enterline challenges the testimony of Edward Satterfield, a Special Agent of the F.B.I., based in Little Rock, Arkansas. Satterfield participated in the investigation of the scheme, and was present at Enterline's residence in Fayetteville on August 8, 1987, when law enforce-

ment officers executed a search warrant. As part of that search, officers from the auto theft unit of the Tulsa Police Department seized several vehicle identification number plates, as well as shipping manifests, from vehicles on Enterline's property. Satterfield then ran a computer check on the identification numbers, and found that several of the vehicles had been reported stolen. Satterfield testified that the computer report indicated that three vehicles not charged in the indictment, but present on Enterline's property, had been reported stolen, and that two vehicles not charged had been renumbered. Trial Transcript, vol. 2, at 155–56. While this portion of Satterfield's testimony did not concern vehicles charged in the indictment, Enterline argues on appeal not that the testimony was inadmissible under Federal Rule of Evidence 404(b), but that the testimony was hearsay and not admissible through any exception in the rules.[1] We disagree, since Satterfield's testimony from the computer report, while hearsay, was admissible under the public records exception, Federal Rule of Evidence 803(8)(B).

Satterfield derived his conclusion that several cars on Enterline's property were reported stolen from a computer report comparing the identification numbers given to Satterfield with vehicle identification numbers from all cars reported stolen. The computer report is clearly hearsay, since it is an out of court statement offered to prove the truth of the matter asserted— that the cars on Enterline's property were reported stolen. The report nevertheless qualifies as a public record within Rule 803(8)(B).[2] The hearsay exception for public records is based on both the necessity for admitting such records and their inherent trustworthiness. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* § 803(8)[01], at 803–233 (1989); *United States v. Quezada,* 754 F.2d 1190, 1193 (5th Cir.1985). Indeed, were the computer record not admissible as a public record to prove that the cars were reported stolen, the difficulty of proving that simple fact would be enormous. Thus, this circuit has admitted, for example, under Rule 803(8), certified documents from the Missouri Department of Revenue to prove ownership of an automobile. *See United States v. King,* 590 F.2d 253, 255 (8th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). Our concern is thus not whether the public records exception applies in this case, but whether the computer report falls within the exclusion found in Rule 803(8)(B) for matters ob-

1. Enterline's argument on Satterfield's testimony is somewhat unclear. In his original brief, Enterline argues that the trial court erroneously admitted hearsay evidence to prove "other crimes" not charged in the indictment. Enterline then refers to *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), which deals with evidence admitted under Federal Rule of Evidence 404(b). Indeed, the district court, following Satterfield's testimony about the computer report, noted that it was admitting the testimony under Rule 404(b), and offered to give a jury instruction on the purpose of 404(b) evidence. Trial Transcript, vol. 2, at 170. Satterfield's testimony followed that of Gary Rudick, who testified about a black Corvette, *id.* at 131, and a 1986 Red Silverado truck, *id.* at 134. Since neither vehicle was charged in the indictment, Enterline objected that Rudick's testimony was not admissible under Rule 404(b). The district court overruled the objections, finding that the testimony concerned the issues of Enterline's intent, knowledge or absence of mistake, all of which were at issue in proving his knowing transportation or possession of stolen vehicles. *Id.* at 146–47. The district court apparently applied the same analysis to Satterfield's testimony, even though no specific Rule 404(b) objection to that testimony appears in the record. Nevertheless, Enterline's Reply Brief suggests that Enterline does not make or rely on a 404(b) argument on appeal. The government relied on Rule 404(b) to argue that Satterfield's testimony was properly admitted, and Enterline replies that his objection is not based on Rule 404(b), specifically stating that Rule 404(b) does not "have anything to do with Enterline's appeal." Reply Brief for Appellant at 4. Thus, we treat Enterline's argument on appeal as based only on the hearsay objection.

2. Rule 803(8)(B) provides a hearsay exception for:
    Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel.
   Fed.R.Evid. 803(8)(B).

served by law enforcement officers in a criminal case. We hold that it does not.

It is clear that the exclusion concerns matters observed by the police at the scene of the crime. Such observations are potentially unreliable since they are made in an adversary setting, and are often subjective evaluations of whether a crime was committed. *See Quezada,* 754 F.2d at 1193–94; *United States v. King,* 613 F.2d 670, 673 (7th Cir.1980); *United States v. Orozco,* 590 F.2d 789, 793 (9th Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979). The exclusion seeks to avoid admitting an officer's report of his observations in lieu of his personal testimony of what he observed. "In adopting this exception, Congress was concerned about prosecutors attempting to prove their cases in chief simply by putting into evidence police officers' reports of their contemporaneous observations of crime." *Orozco,* 590 F.2d at 794 (quoting *United States v. Grady,* 544 F.2d 598, 604 (2d Cir.1976)). Similarly, this circuit explained, in dictum, that Rule 803(8)(B) contains an exclusion for criminal cases because police reports are not "reliable evidence of whether the allegations of criminal conduct they contain are true." *United States v. Bell,* 785 F.2d 640, 644 (8th Cir.1986).

Thus, the subject matter of the public record or report determines its admissibility; the exclusion applies only to "matters observed by police officers and other law enforcement personnel." Other circuits have found that reports not containing matters observed by officers in an adversarial setting do not fall within the exclusion to Rule 803(8)(B). In *Orozco,* the Ninth circuit considered a computer report that the car in which defendants were arrested had crossed the Mexican border on the night of the arrest. The computer report was made by United States Customs officials at the border, who, as standard procedure, enter vehicle license numbers into a computer to determine whether the same vehicle has crossed the border within a seventy-two hour period. The Ninth Circuit held the computer report admissible, finding it significant that "the simple recordation of license numbers of all vehicles which pass

[the] station is not of the adversarial confrontation nature which might cloud [an official's] perception." *Orozco,* 590 F.2d at 793. Thus, the situation provided little opportunity for an inaccurate report. *Id.*

Similarly, in *Quezada,* the Fifth Circuit admitted a warrant of deportation in a proceeding in which defendant was charged with illegal re-entry into the United States following his deportation. The warrant contained a record made by the agent that the defendant had departed the country. The Fifth Circuit found that the information in the warrant required no more of the law enforcement officer than to "mechanically register an unambiguous factual matter." *Quezada,* 754 F.2d at 1194. Thus, "[i]n the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present." *Id. Cf. United States v. Hernandez–Rojas,* 617 F.2d 533, 534–35 (9th Cir.), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980) (notation of departure on warrant "has none of the features of the subjective report made by a law enforcement official in an on-the-scene investigation, which investigative reports lack sufficient guarantees of trustworthiness because they are made in an adversary setting."); *United States v. Puente,* 826 F.2d 1415, 1417–18 (5th Cir.1987) (admitting computer report made at Mexican border on same rationale as *Orozco* and *Quezada* ).

Similarly, the facts of this case are not within the purpose of the exclusion. The computer report does not contain contemporaneous observations by police officers at the scene of a crime, and thus presents none of the dangers of unreliability that such a report presents. Rather, the report merely contains, and is based on, facts: that cars with certain vehicle identification numbers were *reported* to have been stolen. Neither the notation of the vehicle identification numbers themselves nor their entry into a computer presents an adver-

sarial setting or an opportunity for subjective observations by law enforcement officers. The officers were not recording their observations of crime, but were recording facts presented to them. Thus, the computer compilation, while hearsay, is simply not a report susceptible to the dangers which the exclusion set forth in Rule 803(8)(B) was designed to avoid. *Cf. United States v. Johnson,* 722 F.2d 407, 409–10 (8th Cir.1983) (admission of certified document containing a serial number report from the manufacturer of a gun on grounds that report was not a matter observed by law enforcement personnel). Accordingly, we find no error in the district court's admission of Satterfield's testimony.

### B. Sentence enhancement

Enterline was not sentenced under the guidelines. The district court sentenced Enterline to fifteen years imprisonment on counts one through four, fined him $10,000, and ordered full restitution. Sentencing Transcript at 42. The counts on which Enterline was convicted provided for a maximum sentence of thirty years imprisonment and a $50,000 fine. While Enterline did not receive the maximum sentence, he did receive an enhanced sentence. The district court clearly stated that it was relying on "other activities in addition to those ... which [Enterline] was found guilty of." *Id.* at 22. Specifically, the district court considered hearsay statements by Tulsa police officers contained in the presentence report to the effect that Enterline was heavily involved in drug trafficking in Oklahoma. The district court also relied on a letter written by F.B.I. Special Agent Martin Webber which the district court thought implicated Enterline in drug trafficking. *Id.* at 12, 15. The district court also made clear its reliance on other, unspecified letters and information about Enterline and his activities which convinced the district court of Enterline's criminal character and his refusal to conform his conduct to the law. *Id.* at 41–42. Enterline argues that the district court's reliance on any of this hearsay evidence was inap-

propriate, and justifies remanding this case for resentencing. We disagree.

The law is clear that prior to the guidelines, district courts were afforded wide discretion in sentencing. *Orner v. United States,* 578 F.2d 1276, 1278 (8th Cir.1978). Indeed, the district court's inquiry at sentencing was virtually unlimited as to the scope and source of information considered. *Larson v. United States,* 835 F.2d 169, 172 (8th Cir.1987), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *United States v. Papajohn,* 701 F.2d 760, 763 (8th Cir.1983). District courts were thus free to consider uncorroborated hearsay and unprosecuted or unindicted criminal activity. *United States v. York,* 830 F.2d 885, 893 (8th Cir.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); *Papajohn,* 701 F.2d at 763. Moreover, the Federal Rules of Evidence specifically provide that they do not apply to sentencing determinations. Fed.R.Evid. 1101(d)(3).

■ Thus, a court of appeals generally exercises little authority to review a preguidelines sentence imposed by a district court, within statutory limits. *Larson,* 835 F.2d at 172; *Papajohn,* 701 F.2d at 763; *Orner,* 578 F.2d at 1279. For this circuit to reverse a sentence that falls within the limits of the statute, the defendant must show a clear abuse of discretion by the district court, *Papajohn,* 701 F.2d at 763, as when the court relies on material misinformation which the defendant was given no opportunity to rebut or correct. *Larson,* 835 F.2d at 172; *Orner,* 578 F.2d at 1279. But our cases are also clear that when a defendant objects to information on which the district court relies, while he must be given a chance to explain or rebut the information, the procedure giving defendant that opportunity lies within the discretion of the district court. *United States v. Matlock,* 786 F.2d 357, 361 (8th Cir.1986).

■ We find no abuse of discretion by the district court in this case. The district court relied on hearsay and reports of unprosecuted criminal activity. However, it was clearly within the discretion of the

court to do so. To the extent that Enterline argues that the district court relied on material misinformation, Enterline was given an opportunity to rebut it. Indeed, Enterline filed a "Motion to Correct Presentence Report," Sentencing Transcript at 4, and the district court gave Enterline the chance to offer evidence in relation to the presentence report and the alleged errors contained therein. Sentencing Transcript at 12, 16. Enterline had a chance to correct whatever information the district court relied on.

## III. CONCLUSION

We have considered Enterline's other arguments on appeal and find them to be without merit. Accordingly, for the reasons stated, we affirm the judgment of the district court.