Francisco Martinez **GARCIA, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 05–91–00066–CR.

Court of Appeals of Texas, Dallas.

May 21, 1992.

Discretionary Review Granted Oct. 14, 1992.

John G. Tatum, Dallas, for appellant.

Donald G. Davis, Dallas, for appellee.

Before THOMAS, MALONEY and KAPLAN, JJ.

## OPINION

KAPLAN, Justice.

A jury convicted Francisco Martinez Garcia of murder. Punishment was assessed at twenty years' confinement. In ten points of error, appellant complains of (1) the sufficiency of the evidence, (2) *Batson*[1]

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

error, (3) admission of an autopsy report and hearsay testimony of the medical examiner, (4) testimony by an undisclosed witness, (5) hearsay testimony by a police officer, (6) bolstering, and (7) improper jury argument. We overrule all points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Michael Smith and Stacey Embry were in their apartment during the early morning hours of July 27, 1990. Smith heard four shots and looked out his bedroom window. He saw a man lying on the driveway by the washateria. Appellant was walking away from the body. Smith saw appellant put a .38 caliber pistol in his belt. Smith went to look at the man on the ground and saw that he was dead. A number of people gathered at the scene. Smith said that he was afraid to talk to the police in front of other people. Smith later saw appellant and a woman walking toward a store. Appellant had taken off his shirt. Smith identified appellant for the police.

Embry testified that she also heard gunshots. She looked out the window and saw appellant standing in the parking lot. Appellant walked away. Embry left the apartment to look at the body. She did not immediately tell the police what she saw because she was scared. Embry later saw appellant walking with a woman. Appellant had his shirt off, and they were walking "fast like ... they weren't paying attention to anything else." Embry identified appellant for the police.

Dr. Jeffrey Barnard, the acting chief medical examiner for Dallas County, testified that the deceased sustained four gunshot wounds to the trunk. Three of the four wounds were fatal. The deceased was identified as Stewart Allen Miller.

Several defense witnesses testified that appellant was at a nearby bar at the time of the shooting. They said that a man known as "El Diablo" admitted to the murder.

## SUFFICIENCY OF THE EVIDENCE

In his tenth point, appellant argues that the evidence is insufficient to show that the body examined by the medical examiner was that of the victim found at the scene and named in the indictment.

### 1. Standard of Review

■ In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. We determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991). This standard of review applies in both direct and circumstantial evidence cases. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985).

### 2. Application of Law to the Facts

■ Ronald Miller identified State's Exhibit 1 as a photograph of his deceased son, Stewart Allen Miller. The trial court admitted the photograph into evidence. Miller also identified State's Exhibit 29 as a photograph of his deceased son. This autopsy photograph was admitted for record purposes only and was not shown to the jury.

Dr. Jeffrey Barnard explained the procedures followed by the Dallas County Medical Examiner's office. He testified that a body is identified, assigned a specific number, and photographed before an autopsy. Dr. Barnard identified State's Exhibit 29 as such a photograph with a specific number and the name Stewart Allen Miller. He said that an autopsy was performed on the body. Dr. Barnard identified State's Exhibit 31 as the autopsy report on Stewart Allen Miller. The trial court admitted the autopsy report into evidence. Dr. Barnard testified that the individual referred to in the autopsy report was the individual depicted in the autopsy photograph. He said Stewart Allen Miller was the name of the person shown in the photograph.

Dallas Police Officer Robert E. Spurgeon testified that he was present at the scene of the shooting. Officer Spurgeon said the

complainant was lying face down. The paramedics put the complainant on a stretcher, and the body was taken away.

The complainant is, by definition, the victim of the crime. The testimony of Dr. Barnard and Officer Spurgeon is sufficient to establish that the body found at the scene was that of Stewart Allen Miller, the victim named in the indictment. We overrule appellant's tenth point of error.

## BATSON ERROR

In his first point of error, appellant claims that the trial court erred in failing to "quash" the jury panel because the State exercised a peremptory strike against a prospective juror in a racially discriminatory manner.

### 1. Standard of Review

■■■ We review the trial court's ruling on a *Batson* challenge under the "clearly erroneous" standard. *Whitsey v. State*, 796 S.W.2d 707, 728 (Tex.Crim.App.1989) (op. on reh'g). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made. *Id.* at 721–22, *quoting Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). We consider the evidence in the light most favorable to the trial court's ruling. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex.Crim. App.1988). When there are two permissible views of the evidence, the trial court's decision cannot be clearly erroneous. *Whitsey*, 796 S.W.2d at 721–22; *Woods v. State*, 801 S.W.2d 932, 935 (Tex.App.—Austin 1990, pet. ref'd).

### 2. Application of Law to the Facts

■■■ Appellant contends that the State struck a Hispanic venireperson in violation of *Batson*. Appellant is also Hispanic. The prosecutor stated that she exercised this peremptory strike because the venire-person had a close friend who had been charged with a crime. The prosecutor noted that she also struck a non-Hispanic venireperson whose nephew had been convicted of murder. The prosecutor acknowledged that the Hispanic venireperson said that she could be fair. Another Hispanic venireperson served on the jury. The trial court overruled appellant's *Batson* challenge.

Strikes of prospective jurors because they had relatives or friends who had been arrested, charged, or convicted of a crime have been held to be race-neutral. *Munson v. State*, 774 S.W.2d 778, 779–80 (Tex. App.—El Paso 1989, no pet.); *Sims v. State*, 768 S.W.2d 863, 865 (Tex.App.—Texarkana 1989), *pet. dism'd per curiam*, 792 S.W.2d 81 (Tex.Crim.App.1990); *Rijo v. State*, 721 S.W.2d 562, 564 (Tex.App.—Amarillo 1986, no pet.). We find no support in the record for appellant's assertion that the prosecutor's stated reason for the strike was a sham or pretext. We hold that the trial court's finding was not clearly erroneous. The trial court did not err in overruling the *Batson* challenge. Appellant's first point of error is overruled.

## AUTOPSY REPORT AND MEDICAL EXAMINER'S TESTIMONY

In his second and third points of error, appellant complains of the admission of the autopsy report and testimony about that report given by the medical examiner. Appellant contends that the autopsy report and medical examiner's testimony constitute hearsay.

### 1. Autopsy Report

Dr. Jeffrey Barnard testified for the State. He identified State's Exhibit 31 as a true and correct copy of the autopsy report on Stewart Allen Miller. Appellant objected to the admission of the autopsy report as hearsay based on *Cole v. State*[2] and *United States v. Oates*.[3] The trial court

---

**2.** *Cole v. State*, No. 1179–87, 1990 WL 176357 (Tex.Crim.App. Nov. 14, 1990, reh'g granted July 3, 1991).

**3.** *United States v. Oates*, 560 F.2d 45 (2nd Cir. 1977).

sustained this objection. The State then laid the predicate for admission of the report under the business records exception to the hearsay rule. Appellant renewed his objection based on *Cole* and *Oates*. The trial court overruled this objection and admitted the autopsy report into evidence.

### a. Applicable Law

■ Rule 803 of the Texas Rules of Criminal Evidence sets forth certain exceptions to the hearsay rule:

(6) **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

(8) **Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, matters observed by police officers and other law enforcement personnel,* or (C) *against the State, factual findings resulting from an investigation made pursuant to authority granted by law;* unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX.R.CRIM.EVID. 803(6) & (8) (emphasis added). The Texas rules are virtually identical to the comparable provisions of the Federal Rules of Evidence. FED.R.EVID. 803(6) & (8); *see also* 33 S. GOODE, O. WELLBORN, & M. SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 803.11, at 586 (Texas Practice 1988). We consider cases and commentaries construing the Federal Rules of Evidence instructive when interpreting the Texas Rules of Criminal Evidence. *Montgomery v. State,* 810 S.W.2d 372, 387 n. 2 (Tex. Crim.App.1990) (op. on reh'g).

The Second Circuit Court of Appeals interpreted the public records exception to the hearsay rule in *United States v. Oates,* 560 F.2d 45 (2d Cir.1977). Oates was charged with illegal possession of a controlled substance. A chemist with the United States Customs Service testified for the government. The prosecutor questioned the chemist about a report and worksheet prepared by another chemist employed by the same agency. The trial court admitted the report and worksheet into evidence. Oates claimed that the documents contained inadmissible hearsay under the Federal Rules of Evidence.

The *Oates* court determined that the chemist's documents were inadmissible against the defendant for two reasons: (1) they were reports of factual findings resulting from an investigation made pursuant to authority granted by law, and (2) they were records of matters observed by police officers or other law enforcement personnel. *Oates,* 560 F.2d at 67–72; *see* FED.R.EVID. 803(8)(B) & (C). The court reasoned that full-time Customs Service chemists were within the category of "other law enforcement personnel" as important participants in the prosecutorial effort, and that Congress clearly intended "to make evaluative and law enforcement reports absolutely inadmissible against defendants in criminal cases." *Oates,* 560 F.2d at 68–72. The court also determined, based on "clear" legislative intent, that the business records exception to the hearsay rule excluded such documents. *Id.* at 78; *see* FED. R.EVID. 803(6).

The *Oates* opinion has been widely criticized by other courts and commentators. *See United States v. Gilbert,* 774 F.2d 962

(9th Cir.1985); *United States v. Hernandez–Rojas*, 617 F.2d 533 (9th Cir.), *cert. denied*, 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980); *United States v. Wilmer*, 799 F.2d 495 (9th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987); *United States v. Orozco*, 590 F.2d 789 (9th Cir.), *cert. denied*, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979); *United States v. Enterline*, 894 F.2d 287 (8th Cir.1990); *see also* 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(8)[04], at 803–260 (1991); Alexander, *The Hearsay Exception for Public Records in Federal Criminal Trials*, 47 ALB.L.REV. 699, 723 (1983).

The Fifth Circuit also rejected the *Oates* analysis in *United States v. Quezada*, 754 F.2d 1190 (5th Cir.1985). The court noted that the law enforcement exclusion contained in rule 803(8)(B) is based on the presumed unreliability of observations made by law enforcement officials at the scene of a crime or in the course of investigating an offense. The court indicated that public documents should be admitted if they record "routine, objective observations, made as part of the everyday function of the preparing official or agency." *Id.* at 1194.

Our review of the legislative history surrounding the enactment of rule 803(8) supports the analysis used by the Fifth Circuit in *Quezada*. The Senate Report on the Federal Rules of Evidence stated:

> The reason for [the law enforcement personnel] exclusion is that observations by *police officers at the scene of the crime or the apprehension of the defendant* are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases.

S.REP. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.CODE CONG. & ADMIN.NEWS 7051, 7064 (emphasis added).

Similarly, the discussion in the House of Representatives focused exclusively on whether a *police officer's report* should be available against a criminal defendant who has no opportunity to cross-examine the officer. WEINSTEIN & BERGER ¶ 803(8)[01], at 803–238.

### b. Application of Law to the Facts

■ We decline to follow *Oates*. In our view, it is inconsistent with the legislative history surrounding federal rule 803(8)(B), which was meant to exclude only observations and factual findings made by law enforcement personnel *at the scene of a crime or arrest*. Those situations are adversarial in nature, and evaluations by police officers tend to be subjective in that context. We do not construe the Texas Rules of Criminal Evidence to require a different result.[4]

In the instant case, the autopsy was performed by a medical examiner who accomplished such tasks repeatedly as a matter of routine. *See* TEX.CODE CRIM.PROC.ANN. art. 49.25 (Vernon 1979 & Supp.1992). The observations and perceptions of a medical examiner are likely to be trustworthy because autopsies are performed under nonadversarial circumstances. The fact that these observations might be used against a person accused of a crime does not affect the reliability of the report. *See Gilbert*, 774 F.2d at 965; *see also United States v. DeWater*, 846 F.2d 528, 530 (9th Cir.1988).

We further conclude that a medical examiner is not a police officer or other type of law enforcement personnel within the scope of rule 803(8)(B). *See Vasquez v. State*, 814 S.W.2d 773, 776 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). We do not construe article 49.25 to confer law enforcement responsibilities on the medical examiner's office. The medical examiner investigates deaths in a wide variety of circumstances, many of which are not crim-

---

4. We acknowledge that the Court of Criminal Appeals adopted the rationale set forth in *Oates*. *Cole v. State*, No. 1179–87 (Tex.Crim.App. Nov. 14, 1990, reh'g granted July 3, 1991). *Cole* has been pending on rehearing for ten months and is not final or part of the jurisprudence of this state. *See Yeager v. State*, 727 S.W.2d 280, 281 n. 1 (Tex.Crim.App.1987); *Brown v. State*, 807 S.W.2d 615, 616 (Tex.App.—Houston [14th Dist.] 1991, no pet.). We are, therefore, not constrained to follow *Cole*.

inal in nature. *See* TEX.CODE CRIM.PROC. ANN. art. 49.25, § 6. In addition, the medical examiner is not employed by a law enforcement agency. He is appointed by the commissioner's court and serves at the pleasure of that political body. TEX.CODE CRIM.PROC.ANN. art. 49.25, § 2.[5]

We hold that the autopsy report was admissible both as a public record and a business record. *See* TEX.R.CRIM.EVID. 803(6) & (8); *DeWater*, 846 F.2d at 530; *Wilmer*, 799 F.2d at 501; *Vasquez*, 814 S.W.2d at 776. We overrule appellant's third point of error.

### 2. Medical Examiner's Testimony

■ Appellant also contends that the trial court erred in permitting Dr. Barnard to testify about an autopsy he did not perform and a report he did not prepare.

The State established the proper predicate for admission of the autopsy report. Dr. Barnard testified that he was the custodian of records for the Dallas County Medical Examiner's office. He stated that the autopsy report was a business record kept at the Southwestern Institute of Forensic Sciences. He also testified that the author of the report was a qualified medical examiner.

We have already determined that the autopsy report was admissible both as a public record and business record. There is no requirement that the medical examiner who performed the autopsy testify at trial. *See Brooks v. State*, 642 S.W.2d 791, 793 (Tex. Crim.App. [Panel Op.] 1982); *Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Crim.App. [Panel Op.] 1982) (toxicologist allowed to testify about the results of a laboratory test even though he did not personally perform the analysis).

We hold that the trial court did not err in permitting the medical examiner to testify about the autopsy report. We overrule appellant's second point of error.

---

5. We note that the Corpus Christi Court of Appeals has held that a medical examiner is a law enforcement official within the scope of Rule 803(8)(B). *Cruz v. State*, 827 S.W.2d 83 (Tex. App.—Corpus Christi, 1992). The opinion in *Cruz* has not been released for final publication and is subject to revision or withdrawal. In any

### FAILURE TO LIST WITNESS

In his fourth point of error, appellant asserts that the trial court erred in allowing Dallas Police Officer Bobby Hammer to testify at trial because he was not properly disclosed as a witness. Appellant objected to this testimony because the closest names on the State's witness list were "S. Hammer" and "Bobby Himmell." The State contends that it incorrectly listed the witness as "S. Hammer."

### 1. Applicable Law

■ The State should disclose all witnesses who will testify at trial. *Hightower v. State*, 629 S.W.2d 920, 925 (Tex.Crim. App. [Panel Op.] 1981); *Young v. State*, 547 S.W.2d 23, 27 (Tex.Crim.App.1977). If the trial court permits an undisclosed witness to testify, the standard of review is abuse of discretion. *Hightower*, 629 S.W.2d at 925. Among the factors to be considered are whether the State acted in bad faith in failing to disclose the witness, and whether the defendant could reasonably anticipate that the witness would testify at trial. *Bridge v. State*, 726 S.W.2d 558, 566–67 (Tex.Crim.App.1986).

### 2. Application of Law to the Facts

■ Notwithstanding appellant's assertion to the contrary, we find no indication that the State acted in bad faith. In fact, it appears that Officer Hammer was listed incorrectly due to a typographical error.[6] Officer Hammer investigated the murder of Stewart Allen Miller. The State identified a person with the last name of Hammer on its witness list. Appellant could reasonably have anticipated that Officer Hammer might testify at trial. Under these circumstances, we cannot conclude that the trial court abused its discretion in

---

event, we find the court's analysis unpersuasive and choose to follow *Vasquez v. State, supra.*

6. This type of controversy might well be avoided if the State provided more than a first initial and last name when listing witnesses.

allowing Officer Hammer to testify. We overrule appellant's fourth point of error.

## HEARSAY TESTIMONY

■ Appellant argues in his fifth point of error that the trial court erred in failing to grant a mistrial when Officer Hammer gave hearsay testimony that tended to bolster the testimony of two other witnesses. The State elicited the complained of testimony during direct examination:

Q [BY PROSECUTOR]: How would you describe the demeanor of Michael Smith and Stacey Embry [two eyewitnesses to some of the events in question] when they were speaking with you at the scene that evening?

A [OFFICER HAMMER]: They wanted to let me know that they had seen what happened but they also wanted to let me know that they were scared. They didn't want anybody to know that they were talking to me.

[DEFENSE COUNSEL]: I object to his last testimony as it calls for speculation and hearsay from this witness.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Ask for an instruction to disregard.

THE COURT: The jury will disregard the last portion of the answer and not consider it.

[DEFENSE COUNSEL]: Respectfully move for a mistrial.

THE COURT: Your motion is denied.

Q [BY PROSECUTOR]: Without stating what they actually said, could you describe how they appeared when they were giving you information?

[DEFENSE COUNSEL]: I object as I believe this is bolstering prior testimony.

THE COURT: Overruled.

A [OFFICER HAMMER]: Yes, sir. They wouldn't even meet me out in front of the other people in the complex. They had me go to an apartment up in front

where they couldn't be seen where we could talk away from everybody else because they were so scared.

The trial court properly sustained appellant's hearsay objection, and the jury was instructed to disregard the answer. Generally, an instruction to disregard cures any error. *See, e.g., Williams v. State,* 643 S.W.2d 136, 138 (Tex.Crim.App. [Panel Op.] 1982). The testimony of Officer Hammer was not so inflammatory or egregious that it could not be cured by the trial court's instruction to the jury. Moreover, Michael Smith and Stacey Embry testified to the same matters as Officer Hammer.[7] The erroneous admission of evidence that comes in later in the trial without objection does not constitute reversible error. *See, e.g., Penry v. State,* 691 S.W.2d 636, 655 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986). We overrule appellant's fifth point of error.

## BOLSTERING

■ In his sixth point of error, appellant contends that the trial court erred in denying a mistrial after Michael Smith improperly bolstered his previous testimony. The State recalled Smith as a rebuttal witness. The prosecutor asked him whether he was telling the truth. Smith replied that he was. Appellant objected on the basis that the *question* constituted bolstering. The trial court sustained the objection and instructed the jury to disregard the question *and answer.* The trial court denied appellant's motion for a mistrial.

■ Improper bolstering occurs when one item of evidence is improperly used to add credence or weight to some earlier *unimpeached* piece of evidence offered by the same party. *Pless v. State,* 576 S.W.2d 83, 84 (Tex.Crim.App. [Panel Op.] 1978). In this case, Smith's prior testimony was impeached. Smith originally testified that appellant shot the deceased.

---

7. We note that appellant never made a bolstering objection to Officer Hammer's first answer. Therefore, appellant cannot contend for the first time on appeal that this answer bolstered the testimony of two other witnesses. *See Johnson v. State,* 803 S.W.2d 272, 292 (Tex.Crim.App.

1990), *cert. denied,* — U.S. —, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991); *Sterling v. State,* 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); Tex.R.App.P. 52(a).

Several defense witnesses testified that appellant was in a nearby bar at the time of the shooting. Under these circumstances, we conclude that no improper bolstering occurred. In any event, the instruction to disregard sufficiently cured any error. *Cf. Carter v. State*, 614 S.W.2d 821, 824–25 (Tex.Crim.App. [Panel Op.] 1981); *Lacy v. State*, 450 S.W.2d 640, 641 (Tex.Crim.App. 1970). We overrule the sixth point of error.

## JURY ARGUMENT

In his seventh, eighth, and ninth points of error, appellant complains of improper jury argument. Appellant contends that the trial court erred in denying his motions for mistrial after the prosecutor twice misstated the testimony of a defense witness and attempted to bolster the credibility of the State's witnesses.

### 1. Applicable Law

The permissible areas of jury argument are well established. Proper subjects for jury argument include: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to arguments of opposing counsel, and (4) pleas for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim. App.1973). An instruction to disregard by the court normally will cure an improper jury argument unless the remark is so inflammatory that its prejudicial effect cannot be removed by such an admonishment. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990).

### 2. Jury Arguments

#### a. *Misstating Testimony of Defense Witness*

Appellant first contends that the prosecutor misstated the testimony of a defense witness, Frances "Poncha" Martinez. The prosecutor argued to the jury:

As far as the defense lawyer's point about whether or not the defendant was walking away fast, well, again, Poncha, their own witness says, "Yes, not only were we walking fast. The defendant changed his appearance to get away

from the police," and they were walking away.

Appellant objected that the prosecutor misstated the witness's testimony. The trial court sustained the objection and instructed the jury to disregard the comment. Appellant's motion for mistrial was denied.

Poncha Martinez did not testify that appellant was "walking fast." Thus, the prosecutor's comment was a misstatement of the witness's testimony. The remainder of the prosecutor's statement appears justified because Martinez testified to facts from which the jury could reasonably infer that appellant changed his appearance to avoid the police. The prosecutor did not repeat his assertion after the trial court sustained appellant's objection. In addition, Stacey Embry testified that appellant was walking fast. There is some possibility that the prosecutor was confused about the testimony given by a different witness.

The prosecutor continued his summation of the testimony given by Poncha Martinez. Appellant contends that the prosecutor again misstated the witness's testimony in the following argument:

Is that what Poncha told you? Did her memory—is she telling you the truth or not? She tells you she got there and saw this—first of all, she went past all the police that were there that were supposedly holding the scene corded off. Like they told you, they roped it off. She went right past them and went to the body and took a look while the body is still there.

Appellant again objected that the prosecutor misstated the evidence. The trial court sustained the objection and instructed the jury to disregard the argument. A second motion for a mistrial was denied.

We agree that the prosecutor did misstate the witness's testimony. We find no indication in the record that Martinez went inside the area roped off by the police and went to the body. In fact, Martinez testified that she did not get close to the body. Subsequent statements by the prosecutor indicate that he was trying to suggest that

Martinez did *not* approach the scene while the body was still there. In that context, the question of Martinez's proximity to the body appears to be insignificant.

We hold that the jury argument was not extreme or manifestly improper. The prosecutor did not inject any new or harmful facts into evidence. Under these circumstances, the court's instruction to disregard sufficiently cured any error. *Kinnamon,* 791 S.W.2d at 89. We overrule appellant's seventh and eighth points of error.

### b. Bolstering Credibility of State's Witness

 Appellant next contends that the following jury argument improperly bolstered the credibility of the State's witnesses:

> The case really boils down to—actually we have got a case that we're bringing to you that we have got two eyewitnesses who I submit to you, who it's a reasonable deduction from the evidence, are telling you the truth. I mean not only do they have nothing to gain here, they're losing money.
>
> They aren't relatives or they're not friends with anybody out there. They're scared like—it's a reasonable deduction from the evidence it's reasonable for them to be scared. And they don't have any motive, anything to gain in telling you exactly what they saw. These people, I submit to you, are the kind of citizens that we should be proud of.

Appellant objected "to the comment made by the prosecutor." He did not state any grounds for the objection. The trial court nevertheless sustained the objection and instructed the jury to "disregard any personal opinion of the prosecution." Appellant's motion for a mistrial was denied.

We are not convinced that the prosecutor's argument was an attempt to vouch for the credibility of the State's witnesses. Instead, his statements were based on reasonable deductions from the evidence that the eyewitnesses were telling the truth. The prosecutor explained that these witnesses were not relatives or friends of anyone involved in the case. He correctly noted that there was evidence suggesting that they were scared. The prosecutor said that the witnesses did not have a motive or anything to gain from testifying. The final statement that the witnesses were "the kind of citizens that we should be proud of," although somewhat more questionable, is not a clear statement of the prosecutor's personal opinion of the witnesses' credibility.

Appellant cites three cases to support his argument that the State cannot bolster the credibility of its witnesses during closing argument. *Menefee v. State,* 614 S.W.2d 167, 168 (Tex.Crim.App.1981); *Flores v. State,* 778 S.W.2d 526, 528–29 (Tex.App.—Corpus Christi 1989, no pet.); *Sepulveda v. State,* 751 S.W.2d 667, 669–70 (Tex.App.—Corpus Christi 1988, pet. ref'd). In all three cases the trial court overruled the defendant's objection to the jury argument. Here, the court instructed the jury to disregard the personal opinion of the prosecutor. We hold that this instruction cured any error. We overrule appellant's ninth point of error.

The judgment is affirmed.